# In the United States Court of Federal Claims

No. 19-213C

(E-Filed:  December 4, 2020)

|  |  |
|---|---|
| QUENTIN BACA, et al.,<br><br>              Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>              Defendant. | Motion to Dismiss; RCFC 12(b)(6); Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19; Anti-Deficiency Act (ADA), 31 U.S.C. §§ 1341-42; Government Employees Fair Treatment Act of 2019 (GEFTA); Pub. L. No. 116-1, 133 Stat. 3 (2019); 28 U.S.C. § 1500. |

Molly Ann Elkin, Washington, DC, for plaintiff.  Gregory K. McGillivary, Sarah M. Block, John W. Stewart, of counsel.

Erin K. Murdock-Park, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Ann C. Motto, of counsel.

## OPINION AND ORDER

CAMPBELL-SMITH, Judge.

      Plaintiffs in this putative collective action allege that the government, through several agencies, violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, by failing to timely pay their earned overtime and regular wages during the partial government shutdown and lapse of appropriations that began on December 22, 2018.  See ECF No. 1 at 3 (complaint, filed on February 6, 2019); ECF No. 32 at 338-39 (third amended complaint, filed on April 19, 2019).  On May 3, 2019, defendant moved to dismiss the complaint for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC); and in the alternative, for failure to state a claim on which relief may be granted, pursuant to RCFC 12(b)(6) on the basis that the Anti-Deficiency Act (ADA), 31 U.S.C. §§ 1341-42, prohibited the government from paying employees.  See ECF No. 33.

In analyzing defendant's motion, the court has considered:  (1) plaintiffs' complaint, ECF No. 1; (2) plaintiffs' third amended complaint (hereinafter referred to as the complaint, unless otherwise stated), ECF No. 32; (3) defendant's motion to dismiss, ECF No. 33; (4) plaintiffs' response to defendant's motion, ECF No. 34; (5) defendant's reply in support of its motion, ECF No. 38; (6) defendant's first supplemental brief in support of its motion, ECF No. 40; (7) plaintiffs' response to defendant's first supplemental brief, ECF No. 41; (8) defendant's second supplemental brief in support of its motion, ECF No. 50; (9) plaintiffs' response to defendant's second supplemental brief, ECF No. 54; (10) defendant's third supplemental brief in support of its motion, ECF No. 59; and (11) plaintiffs' response to defendant's third supplemental brief, ECF No. 60. The motion is now fully briefed and ripe for ruling.[1]  The court has considered all of the arguments presented by the parties, and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, defendant's motion is **DENIED**.

I.      Background

Beginning at midnight on December 22, 2018, the federal government partially shut down due to a lack of appropriations.  See ECF No. 32 at 339.  The named plaintiffs in this case were, at the time of the shutdown, employees of the United States working as air traffic controllers for the Federal Aviation Administration (FAA).  See id. at 338. Although the lapse in appropriations began on December 22, 2018, the FAA did not exhaust its appropriated funds until 12:01 a.m. on December 24, 2020.  See id. at 342.

In their complaint, plaintiffs allege that they were categorized as excepted employees, and "compelled to continue to work through the shutdown." Id. at 339. Plaintiffs did not receive timely minimum or overtime wages for work performed during the shutdown.  See id. at 344-45.  Plaintiffs also allege that some air traffic controllers did not receive timely minimum or overtime wages for work performed between December 19 and December 23, 2018, even though the FAA had not yet exhausted its appropriated

---

[1]      In one of its supplemental briefs, defendant suggests that a recent decision issued by the Supreme Court of the United States, Maine Community Health Options v. United States, 140 S. Ct. 1308 (2020), a case that does not involve FLSA claims, indicates that this court lacks jurisdiction to hear this case because the FLSA "contains its own provision for judicial review." ECF No. 59 at 2.  In the same brief, defendant acknowledges binding precedent from the United States Court of Appeals for the Federal Circuit to the contrary.  See id. (citing Abbey v. United States, 745 F.3d 1363 (Fed. Cir. 2014)).  The court will not review this entirely new basis for dismissal, which was argued for the first time in defendant's third supplemental brief, and which defendant acknowledges contradicts binding precedent.  If defendant believes this court lacks jurisdiction to continue exercising its authority in this case under the authority of Maine Community Health, it may file a motion properly raising the issue.  See Rule 12(h)(3) of the Rules of the United States Court of Federal Claims (RCFC) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

funds.  See id. at 345-48.  In addition, plaintiffs claim that defendant's "violations of the FLSA as alleged herein have been done in an intentional, willful, and bad faith manner." Id. at 349, 353, 354; see also id. at 350, 351. Plaintiffs now seek "backpay as well as monetary liquidated damages equal to any unpaid or untimely paid minimum wage and overtime compensation earned since December 19, 2018, as well as interest thereon," and attorneys' fees and costs.  See id. at 355.

II.     Legal Standards

        A.      Dismissal for Lack of Jurisdiction

        Pursuant to the Tucker Act, the court has jurisdiction to consider "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  To invoke the court's jurisdiction, plaintiffs must show that their claims are based upon the Constitution, a statute, or a regulation that "'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'"  United States v. Mitchell, 463 U.S. 206, 217 (1983) (quoting United States v. Testan, 424 U.S. 392, 400 (1976)).

        Plaintiffs bear the burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence.  See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  In reviewing plaintiffs' allegations in support of jurisdiction, the court must presume all undisputed facts are true and construe all reasonable inferences in plaintiffs' favor.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982); Reynolds, 846 F.2d at 747 (citations omitted).  If, however, a motion to dismiss "challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence in order to resolve the factual dispute."  Reynolds, 846 F.2d at 747.  If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint.  See RCFC 12(h)(3).

        B.      Dismissal for Failure to State a Claim

        When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff."  Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy."  Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

3

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.    Analysis

    A.    The Court Has Jurisdiction over Plaintiffs' Claims

At the end of its motion to dismiss, defendant includes a short argument in which it takes the position that the court lacks jurisdiction to hear plaintiffs' claims pursuant to 28 U.S.C. § 1500.  See ECF No. 33 at 24-25.  Section 1500 states, in its entirety, as follows:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.  Of relevance here, the United States Court of Appeals for the Federal Circuit has held that the "question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action."  Lovelades Harbor, Inc. v. United States, 27 F.3d 1545, 1548 (Fed. Cir. 1994).

According to defendant, "Section 1500 bars plaintiffs from pursuing claims in the Court of Federal Claims because another claim in district court based on the same operative facts was pending on the date they filed their complaint in the Court of Federal Claims."  ECF No. 33 at 24.  Defendant argues that plaintiffs' claims are "based upon the same operative facts" as the claims asserted in National Air Traffic Controllers Association, AFL-CIO v. United States, Case No. 19-62 (D.D.C. 2019), which was filed in the United States District Court for the District of Columbia on January 11, 2019.  Id. Defendant explains the operative facts of National Air Traffic Controllers, as follows: "NATCA filed its suit on behalf of 'similarly situated employees at the FAA working in 'excepted' status in accordance with the minimum wage and overtime provisions of the' FLSA, who asserted untimely payment of wages for their work performed during the lapse in appropriations."  Id.  Given the symmetry of claims and the fact that the district court case was filed first, defendant argues, this court must dismiss the present action. See id. at 25.

As plaintiffs note in response, however, defendant's analysis elides a critical piece of the statutory text.  See ECF No. 34 at 11-14.  Section 1500 operates only when the same "plaintiff or his assignee" is involved with the two similar cases.  28 U.S.C. § 1500.

As the Supreme Court of the United States has explained:  "[Section 1500] is more straightforward than its complex wording suggests.  The [Court of Federal Claims] has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents."  United States v. Tohono O'Odham Nation, 563 U.S. 307, 311 (2011) (emphasis added).

Here, according to plaintiffs, none of the named plaintiffs in the district court case when it was filed on January 11, 2019, were named plaintiffs in this case when it was filed on February 6, 2019.  See ECF No. 34 at 12 (stating that "at the time the original [c]omplaint was filed on February 6, 2019, none of the individual plaintiffs in the instant case were plaintiffs in the then-pending district court case").  Defendant has offered no evidence to the contrary, but argues in its reply that the court should deem plaintiffs in this case to be "encompassed by the first-filed district court action," because the plaintiffs in the district court case "sought to represent all air traffic controllers."  ECF No. 38 at 21-22.  This position, however, is discordant with requirements for maintaining a claim under the FLSA.  The FLSA requires individuals to consent in writing to become a party to a case.  See 29 U.S.C. § 216(b) (stating that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").  As such, the theoretically overlapping classes of plaintiffs between the two cases is not enough to establish an identity of plaintiffs for purposes of § 1500.

Defendant also insists that plaintiffs' reading of § 1500 "is based on a very narrow reading of § 1500's statutory text, which contradicts the Federal Circuit's determination that § 1500 is not to be interpreted narrowly," and criticizes plaintiffs for urging the court to adopt a "literal" reading of the statute.  ECF No. 38 at 19, 20.  The court disagrees with defendant.  As an initial matter, defendant's reliance on Trusted Integration, Inc. v. United States, 659 F.3d. 1159, 1164 (Fed. Cir. 2011), in arguing against a narrow construction of Section 1500 is misleading.  See id. at 20.  While the Federal Circuit did indeed counsel against a narrow view of the statute, that admonition was clearly made in reference to determining whether two cases involved the same set of operative facts.  See Trusted Integration, 659 F.3d at 1164.  The court did not address the identity of plaintiffs in Trusted Integration, because Trusted Integration, Inc. was clearly the named plaintiff in both cases at issue.  See id. at 1162.  And, even assuming that the proper construction of all parts of the statute is broad, defendant asks the court to read the term "plaintiff or his assignee" so broadly that it would lose all meaning.  28 U.S.C. § 1500.  The court declines to do so.

Moreover, applying the statutory text as written cannot fairly be viewed as overly-restrictive.  In the words of the Supreme Court, under § 1500, this court "has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents."  Tohono, 563 U.S. at 311 (emphasis added).  Because defendant has not demonstrated any overlap of plaintiffs between this

5

case and <u>National Air Traffic Controllers Association</u>, Case No. 19-62 (D.D.C. 2019), §
1500 does not abrogate this court's jurisdiction.  As plaintiffs state:  "[p]ut simply, 28
U.S.C. § 1500 is not implicated here because the two cases at issue were brought by
<u>different plaintiffs</u>; whether this case involves the same operative facts as the then-
pending district court case is entirely irrelevant."  ECF No. 34 at 12.

  B.  Plaintiffs Have Stated a Claim on which Relief Can Be Granted

    1.  Relevant Statutes

  This case fundamentally concerns the intersection of two statutes, the ADA and
the FLSA.  The ADA states that "an officer or employee" of the federal government
"may not . . . make or authorize an expenditure or obligation exceeding an amount
available in an appropriation or fund for the expenditure or obligation."  31 U.S.C.
§ 1341(a)(1)(A).  In addition, the ADA dictates that "[a]n officer or employee of the
United States Government or of the District of Columbia government may not accept
voluntary services for either government or employ personal services exceeding that
authorized by law except for emergencies involving the safety of human life or the
protection of property."  31 U.S.C. § 1342.  In 2019, Congress amended the ADA,
adding, in relevant part, the following:

> [E]ach excepted employee who is required to perform work during a covered
> lapse in appropriations[2] shall be paid for such work, at the employee's
> standard rate of pay, at the earliest date possible after the lapse in
> appropriations ends, regardless of scheduled pay dates, and subject to the
> enactment of appropriations Acts ending the lapse.

31 U.S.C. § 1341(c)(2) (footnote added).  The amendment is commonly referred to as the
Government Employees Fair Treatment Act of 2019 (GEFTA), Pub. L. No. 116-1, 133
Stat. 3 (2019).  The knowing or willful violation of the ADA is punishable by a fine of
"not more than $5,000" or imprisonment "for not more than 2 years, or both."  31 U.S.C.
§ 1350.  And federal employees who violate the ADA "shall be subject to appropriate
administrative discipline including, when circumstances warrant, suspension from duty
without pay or removal from office."  31 U.S.C. § 1349(a).

---

2  The statute defines "covered lapse in appropriations" to mean "any lapse in
appropriations that begins on or after December 22, 2018."  31 U.S.C. § 1341(c)(1)(A).

Defendant separately has obligations to its employees pursuant to the FLSA, which governs minimum wage and overtime wage compensation for certain employees.[3] See 29 U.S.C. § 213 (identifying categories of exempt employees).  The FLSA requires that the government "pay to each of [its] employees" a minimum wage.  29 U.S.C. § 206(a).  Pursuant to the FLSA, the government also must compensate employees for hours worked in excess of a forty-hour workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(1).  Although the text of the statute does not specify the date on which wages must be paid, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993).  If an employer violates the FLSA's pay provisions, the employer is "liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be."  29 U.S.C. § 216(b).  The employer may also be liable "in an additional equal amount as liquidated damages," id., unless "the employer shows to the satisfaction of the court that the act or omission . . . was in good faith, and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260.

### 2.    The Court's Reasoning in Martin Applies

In its motion to dismiss, defendant first argues that plaintiffs' complaint should be dismissed for failure to state a claim because the agencies for which appropriations lapsed on December 22, 2018, were prohibited by the ADA from paying their employees—even excepted employees who were required to work.  See ECF No. 33 at 14-16.  This mandate, in defendant's view, means that defendant cannot be held liable for violating its obligations under the FLSA.  See id.  Defendant argues:

> When Congress criminalized payments during an appropriations lapse, it plainly precluded payments on the schedule plaintiffs assert is required by the FLSA.  Federal officials who comply with that criminal prohibition do not violate the FLSA, and Congress did not create a scheme under which compliance with the [ADA] would result in additional compensation as damages to federal employees.

Id. at 14-15.

---

[3]    The FLSA initially applied only to the private sector when enacted in 1938, but was amended to cover public employees in 1974.  See Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55 (1974).

The court has previously ruled on the intersection of the ADA and the FLSA in the context of a lapse in appropriations.  See Martin, 130 Fed. Cl. 578 (2017).  In Martin, plaintiffs were "current or former government employees who allege[d] that they were not timely compensated for work performed during the shutdown, in violation of the [FLSA]." Id. at 580 (citing 29 U.S.C. § 201 et seq.).  The plaintiffs in Martin alleged the right to liquidated damages with regard to both the government's failure to timely pay minimum wages and its failure to pay overtime wages.  See id.  In its motion for summary judgment, the government argued that "it should avoid liability under the FLSA for its failure to [pay plaintiffs on their regularly scheduled pay days during the shutdown] because it was barred from making such payments pursuant to the ADA." See id. at 582.  The government summarized its argument in Martin as follows:

> The FLSA and the Anti-Deficiency Act appear to impose two conflicting obligations upon Federal agencies:  the FLSA mandates that the agencies "shall pay to each of [its] employees" a minimum wage, 29 U.S.C. § 206(a) (emphasis added), which has been interpreted by the courts to include a requirement that the minimum wage be paid on the employees' next regularly scheduled pay day, see Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 n.20 [65 S. Ct. 895, 89 L. Ed. 1296] (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993), and the [ADA] mandates that "[a]n officer or employee of the United States Government . . . may not  . . . make or authorize an expenditure . . . exceeding an amount available in an appropriation or fund for the expenditure . . . ." 31 U.S.C. § 1341(A)(1)(A) (emphasis added). Thus, when Federal agencies are faced with a lapse in appropriations and cannot pay excepted employees on their next regularly scheduled payday, the question arises of which statutory mandate controls.

Id. at 582-83 (quoting defendant's motion for summary judgment) (alterations in original).

After reviewing applicable precedent and persuasive authority, the court concluded that "the issue is more complex than simply a choice between whether the FLSA or the ADA controls." Id. at 583.  In the court's view:

> the appropriate way to reconcile the [ADA and the FLSA] is not to cancel defendant's obligation to pay its employees in accordance with the manner in which the FLSA is commonly applied.  Rather, the court would require that defendant demonstrate a good faith belief, based on reasonable grounds, that its actions were appropriate.  As such, the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages.

Id. at 584.

The court noted that plaintiffs' claims survived a motion to dismiss because they had "alleged that defendant had failed to pay wages" on plaintiffs' "next regularly scheduled payday." Id. at 584. On summary judgment, the court concluded that plaintiffs had proven this claim. See id. The court then concluded that the evidence supported an award of liquidated damages because the government failed to satisfy the court that it acted in good faith and on reasonable grounds when it failed to make the payments required under the FLSA.[4] See id. at 585-86.

Both parties acknowledge that the plaintiffs in Martin were "situated similarly to plaintiffs here." ECF No. 33 at 15 (defendant's motion to dismiss); see also ECF No. 32 at 341 (plaintiffs citing Martin in their complaint); ECF No. 34 at 16 (plaintiffs noting that defendant makes the "exact same argument" here as it did in Martin with regard to the intersection of the FLSA and the ADA). In addition, plaintiffs here, like the plaintiffs in Martin, have alleged that defendant's violations of the FLSA were willful. See ECF No. 32 at 349, 350, 351, 353, 354.

In its motion to dismiss, defendant does not dispute plaintiffs' allegations that they were required to work during the shutdown, or that the plaintiffs were not paid during that time due to the lapse in appropriations. See ECF No. 33. With regard to the sufficiency of plaintiffs' allegations, defendant characterizes the issue now before the court as "whether plaintiffs have stated a claim for liquidated damages under the [FLSA] notwithstanding the provisions of the [ADA]." Id. at 8. In arguing its position, defendant reiterates the arguments advanced in Martin, but does not present any meaningful distinction between the posture of the Martin plaintiffs and the plaintiffs here. Instead, it acknowledges that "[t]his Court in Martin v. United States concluded that plaintiffs situated similarly to plaintiffs here could recover liquidated damages under the FLSA," but states that it "respectfully disagree[s] with that holding." Id. at 15.

Notwithstanding defendant's disagreement, the court continues to believe that the framework it set out in Martin is appropriate and applies here.[5] As it did in Martin, "the

---

[4]    In Martin, the defendant also argued that it should avoid liability for liquidated damages with regard to overtime wages due to its inability to calculate the correct amounts due. See Martin v. United States, 130 Fed. Cl. 578, 586-87 (2017). This argument was based on a bulletin from the Department of Labor, and involves an issue that has not been raised in the present case. The absence of this argument, however, has no bearing on the application of the court's reasoning in Martin with regard to the structure of the proper analysis in this case.

[5]    Defendant also argues that its obligations under the FLSA are limited by the ADA because "a congressional payment instruction to an agency must be read in light of the [ADA]." ECF No. 33 at 18. In support of this argument, defendant cites to Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1171 (Fed. Cir. 1995). See id. In

court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages."[6] Martin, 130 Fed. Cl. at 584. The court will, of course, consider the GEFTA amendment to the ADA as part of its analysis.

### 3. Waiver of Sovereign Immunity

Before analyzing the sufficiency of plaintiffs' allegations, the court must address defendant's contention that plaintiffs' claims are barred by the doctrine of sovereign immunity. In its motion to dismiss, defendant correctly notes that "'[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.'" ECF No. 33 at 20-21 (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)). And that waiver "'will be strictly construed, in terms of its scope, in favor of the sovereign.'" Id. at 21 (quoting Lane, 518 U.S. at 192). Defendant concedes that the FLSA includes a waiver of sovereign immunity, but argues that the claims made by plaintiffs in this case fall outside the scope of that waiver. See id.; see also King v. United States, 112 Fed. Cl. 396, 399 (2013) (stating that "there is no question that sovereign immunity has been waived under the FLSA").

---

Highland-Falls, plaintiffs challenged the Department of Education's (DOE) method for allocating funds under the Impact Aid Act. Highland-Falls, 48 F.3d at 1171. The United States Court of Appeals for the Federal Circuit found, however, that the DOE's "approach was consistent with statutory requirements." Id. The case did not address FLSA claims, and found that the DOE's approach "harmonized the requirements of the Impact Aid Act and the [ADA]." See id. In the court's view, the Federal Circuit's decision in Highland-Falls does not alter the analysis in this case. The United States District Court for the District of Columbia's combined decision in National Treasury Employees Union v. Trump, Case No. 19-cv-50 and Hardy v. Trump, Case No. 19-cv-51, 444 F. Supp. 3d 108 (2020), discussed by defendant in one of its supplemental filings, see ECF No. 50, is likewise unhelpful. Although it involved facts that arose from the same 2018 lapse in appropriations, the decision focuses almost exclusively on an analysis of whether plaintiffs' claims were moot, rather than on the operation of the ADA.

[6]     The parties both claim that the Supreme Court of the United States' decision in Maine Community Health, 140 S. Ct. 1308, supports their position in this case. See ECF No. 59, ECF No. 60. Maine Community Health does not address the FLSA, and only includes a limited discussion of the ADA. See Maine Cmty. Health, 140 S. Ct. at 1321-22. Accordingly, the decision does not dictate the outcome here. To the extent that the case informs the present discussion, however, it tends to support plaintiffs. In the opinion, the Supreme Court held that "the [ADA] confirms that Congress can create obligations without contemporaneous funding sources," and concludes that "the plain terms of the [statute at issue] created an obligation neither contingent on nor limited by the availability of appropriations or other funds." Id. at 1322, 1323. Applied here, this conclusion suggests that the defendant can incur an obligation to pay plaintiffs pursuant to the normal operation of the FLSA even when funding is not available.

Defendant argues that the FLSA "does not require that employees be paid on their regularly scheduled pay date or make damages available when compensation is not received on a pay date." ECF No. 33 at 21. As a result, defendant contends, the scope of the FLSA's waiver of sovereign immunity does not extend to the category of claims alleging a FLSA violation because wages were not paid as scheduled, such as plaintiffs' claims in this case. See id. at 20-23. According to defendant, the GEFTA confirms its long-standing belief that the government's payment obligations under the FLSA are abrogated by a lack of appropriations:

> The [GEFTA] provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates." Pub. L. No. 116-1, 133 Stat. 3. Congress has thus spoken directly to the question of when compensation should be paid. There can be no basis for inferring that compensation made in accordance with that explicit directive subjects the United States to liquidated damages.

Id. at 22-23.

Defendant also asserts that the scope of its waiver of sovereign immunity for FLSA claims does not cover the claims asserted here. See ECF No. 38 at 14. It argues, without citation to any authority, that:

> a cause of action under the FLSA cannot per se accrue against the United States when federal agencies do not pay employees on their regularly scheduled paydays during a lapse in appropriations because a federal statute expressly provides for when and at what rate federal employees will be paid under those circumstances.

Id. at 14-15.

The court disagrees. The claims brought by plaintiffs in this case are straightforward FLSA minimum wage and overtime claims under the FLSA. See ECF No. 32 at 348-55. Because the FLSA does not specify when such claims arise, courts have interpreted the statute to include a requirement that employers make appropriate wage payments on the employee's next regularly scheduled payday. See Brooklyn Sav. Bank, 324 U.S. at 707; Biggs, 1 F.3d at 1540. Contrary to defendant's suggestion, the court is unpersuaded that this judicially-imposed timing requirement transforms ordinary FLSA claims into something analytically distinct, and beyond the scope of the statute's waiver of sovereign immunity.

Accordingly, the court finds that defendant has waived sovereign immunity as to plaintiffs' claims, as it has with all FLSA claims, and the court will review the sufficiency of plaintiffs' allegations as it would in any other FLSA case.

4.      Plaintiffs State a Claim for FLSA Violations

As noted above, the FLSA requires that the government "pay to each of [its] employees" a minimum wage.  29 U.S.C. § 206(a).  Pursuant to the FLSA, the government also must compensate employees for hours worked in excess of a forty-hour workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(1).  And although the text of the statute does not specify the date on which wages must be paid, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday.  See Brooklyn Sav. Bank, 324 U.S. at 707; Biggs, 1 F.3d at 1540.

In their complaint, plaintiffs allege that during the lapse in appropriations, they were categorized as excepted employees, and "compelled to continue to work through the shutdown."  ECF No. 32 at 339.  Plaintiffs also allege that they did not receive timely minimum or overtime wages for work performed during the shutdown.  Id. at 344-48.

Defendant does not contest any of these allegations, and in fact, concedes that "plaintiffs, air traffic controllers, [were] employees of the [FAA], an agency that was affected by the lapse in appropriations," and that "plaintiffs were paid at the earliest possible date after the lapse in appropriations ended."  ECF No. 33 at 13, 14.  Defendant also admits that "[p]laintiffs are federal employees who performed excepted work during the most recent lapse in appropriations."  Id. at 17.  In short, defendant does not claim that plaintiffs are not entitled to payment under the FLSA, but instead argues that it "fully complied with its statutory obligations to plaintiffs."  Id. at 18.

The court finds that, presuming the facts as alleged in the complaint and drawing all reasonable inferences in their favor, plaintiffs have stated a claim for relief under the FLSA.  See Cary, 552 F.3d at 1376 (citing Gould, 935 F.2d at 1274).

5.      Liquidated Damages

Defendant insists that its failure to pay plaintiffs was a decision made in good faith, in light of the ADA.  See ECF No. 38 at 15.  It further urges the court to find that its good faith is so clear that the recovery of liquidated damages should be barred at this stage in the litigation.  See id. at 15-18.  But as the court held in Martin:

[I]t would be inappropriate to determine, on motion to dismiss, whether the government had reasonable grounds and good faith.  It may well be that the government can establish these defenses, but its opportunity to do so will

12

come later on summary judgment or at trial.  Moreover, even if the court were to decide that a liquidated damages award is warranted, additional factual determinations remain to be made as to which employees, if any, are entitled to recover, and damages, if any, to which those employees would be entitled.

Martin v. United States, 117 Fed. Cl. 611, 627 (2014).  Accordingly, the court declines to rule at this time on the issue of whether defendant can establish a good faith defense against liability for liquidated damages in this case.

IV.   Conclusion

Accordingly, for the foregoing reasons:

(1)   Defendant's motion to dismiss, ECF No. 33, is **DENIED**;

(2)   On or before **February 5, 2021**, defendant is directed to **FILE** an **answer** or otherwise respond to plaintiffs' complaint; and

(3)   On or before **February 5, 2021**, the parties are directed to **CONFER** and **FILE** a **joint status report** informing the court of their positions on the consolidation of this case with any other matters before the court.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge

13